UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>MARIA LARKIN,<br><br>　　　　　　　　　　　Defendant(s). | Case No. 2:12-CR-319 JCM (GWF)<br><br>ORDER |

Presently before the court is the government's first motion *in limine* to exclude testimony of defendant's witnesses.  (Doc. # 62).  Defendant Maria Larkin ("defendant") has not filed a response, and the deadline to respond has now passed.

Also before the court is the government's second motion *in limine* to preclude testimony regarding suspicious activity reports.  (Doc. # 66).  Defendant has not filed a response, and the deadline to respond has now passed.

**I.     Background**

On August 6, 2014, the government filed a superseding criminal indictment charging defendant with (1) structuring transactions to evade reporting requirements; (2) aiding and abetting; and (3) evasion of payment.  The superseding indictment includes a forfeiture allegation. (Doc. # 46).  The case is currently set for trial.

　　*a.  Evasion of payment*

The government's allegations against defendant center on the following facts.  On January 1, 2004, defendant became the primary owner of a Nevada entity named Five Star Home Health Care ("FSHHC").  Defendant wholly owned and operated this corporation from 2004 to 2009.

**James C. Mahan**
**U.S. District Judge**

During these years, FSHHC was delinquent in filing employer's tax returns, also known as Forms 941, and in paying employment taxes for these years. (Doc. # 62).

In 2007, the Internal Revenue Service ("IRS") contacted defendant to determine the liability for delinquent employment taxes related to FSHHC. Defendant conceded that she was responsible for FSHHC's delinquent payroll taxes. In September 2007, defendant filed and signed Forms 941 for the years 2004 through 2007 with the IRS. Defendant represented that FSHHC owed approximately $1,500,000.00 in payroll taxes. (Doc. # 62).

Defendant attempted to execute an offer in compromise to pay the delinquent taxes. However, she failed to fulfill her obligations under the agreement. Accordingly, on September 8, 2008, defendant was assessed a trust fund recovery penalty of approximately $1,100,000.00. This penalty was allegedly never paid. (Doc. # 62).

On June 25, 2009, defendant filed articles of organization with the Nevada secretary of state for the business Five Star Healthcare ("FSHC"). In October 2009, defendant and her nephew opened bank accounts for FSHC with Wells Fargo Bank. Defendant continued to file Forms 941 for FSHC through the end of 2009, without remitting payments. Defendant stopped operating FSHC on October 31, 2009, and began to operate FSHC under her nephew's name.

On June 16, 2010, defendant consented to the assessment of $541,431.00 in penalties relating to her intentional failure to remit the required payroll taxes relating to FSHHC. These penalties remain outstanding. Further, on September 8, 2008, and September 13, 2010, defendant was assessed penalties totaling $1,737,365.00 as the responsible officer of FSHHC. To date, defendant has an outstanding tax liability of almost $2,000,000.00. (Doc. # 62).

b. *Structuring*

In 2009, when defendant was still the owner of FSHHC, she began to engage in structuring. Defendant wrote checks to herself and others drawn from FSHHC's business operating account in large amounts under $10,000.00. Many of these checks were cashed at Palace Station Hotel and Casino ("Palace Station"). Bank records allegedly show that shortly after each check was cashed, defendant's personal bank account would receive a cash deposit in the same amount as the check. Defendant then used these funds for personal expenses. (Doc. # 62).

This structuring pattern continued into 2010 and 2011, even after defendant relinquished formal ownership of the business to her nephew. The government contends that in this time period, defendant made thirty-three cash deposits all under $10,000.00, totaling $308,100.00. Several of these deposits allegedly occurred on the same day. According to the government, on May 13, 2011, defendant used a majority of the structured funds to purchase a home in her nephew's name to conceal assets from the IRS. (Doc. # 62).

## II.   Legal Standard

*a.  Motions in limine*

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion.").

"[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

**James C. Mahan**
**U.S. District Judge**

### b. Relevance

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### c. Substantive offenses

In order for a defendant to be found guilty of structuring, the government must prove that the defendant structured, assisted in structuring, or attempted to structure or assist in structuring, any transaction involving one or more domestic financial institutions, for the purpose of evading reporting requirements. *See* 31 U.S.C. § 5324(a)(3); *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004).

Defendant is also charged with evasion of payment under 26 U.S.C. § 7201. "The elements of attempted income tax evasion under 26 U.S.C. § 7201 are: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Kayser*, 488 F.3d 1070, 1073 (9th Cir. 2007); *see also Sansone v. United States*, 380 U.S. 343, 351 (1965).

## III. Discussion

### a. First motion in limine

In the instant motion, the government seeks an order excluding the testimony of four proposed expert witnesses identified in defendant's notice dated February 27, 2015. (Doc. # 62-1). The government argues that the proposed witness testimony is irrelevant and that the notice of expert testimony provided by the defendant is insufficient under Federal Rule of Criminal Procedure 16(b)(1)(C).

Rule 16(b)(1)(C)'s disclosure requirements are invoked when the defendant requests similar disclosure from the government or gives notice of an intent to present expert testimony on her mental condition under Rule 12.2(b). *See* Fed. R. Civ. P. 16(b)(1)(C)(i)-(ii). The government

**James C. Mahan**
**U.S. District Judge**

- 4 -

does not show that either condition has been met here. Accordingly, Rule 16(b)(1)(C) does not warrant exclusion of defendant's proposed expert testimony.

In any case, defendant's notice meets the requirements of Rule 16(b)(1)(C). *See United States v. Finley*, 301 F.3d 1000, 1017 (9th Cir. 2002) (finding disclosure met minimum requirements of Rule 16(b)(1)(C) where notice provided government with information regarding general nature of doctor's testimony); *United States v. Halgat*, No. 2:13-cr-00239-JAD, 2014 WL 176778, at *4-5 (D. Nev. Jan. 13, 2014) (approving of government's Rule 16 disclosure where it summarized testimony and attached experts' curricula vitae). Defendant provides at least a single paragraph summary for each witness describing his opinions and the basis for those opinions. Defendant also attached the curriculum vitae for each proposed witness, depicting the experts' qualifications. (Doc. # 62-1).

Moreover, even if defendant's disclosure did not meet Rule 16's requirements, exclusion is not necessarily the appropriate remedy. *See Finley*, 301 F.3d at 1018 (noting that discovery violation should result in exclusion only where willful, blatant, and deliberate). Accordingly, the court will not grant the motion *in limine* on the grounds that defendant's Rule 16 disclosure was insufficient.

In light of the foregoing, the court will proceed to address the government's remaining objections as to each witness's proposed testimony in turn.

      i.    Dr. Robert Hunter

Defendant intends to call Dr. Robert Hunter ("Dr. Hunter") to testify that defendant meets all the criteria for a diagnosis of severe gambling disorder. Defendant states that "Dr. Hunter's opinion is confirmed by formal testing as well as by informal interview with another gambler." (Doc. # 62-1).

Dr. Hunter wishes to testify that defendant's offenses are attributable to her gambling disorder, and that her condition "detrimentally impacted her thinking and judgment in that she was preoccupied with gambling and her gambling debt at a level where she thought of little else." (Doc. # 62-1). The court will preclude Dr. Hunter's testimony on relevance grounds.

**James C. Mahan**
**U.S. District Judge**

- 5 -

As the government notes, similar testimony of this same expert has been excluded by another court in this circuit, a ruling that was upheld on appeal. *See United States v. Scholl*, 166 F.3d 964, 971 (9th Cir. 1999). While the district court in *Scholl* allowed Dr. Hunter to testify that the defendant was a compulsive gambler, it "excluded proffered evidence regarding distortion in thinking and denial of the existence of a gambling problem." *Id.* at 970.

The court reasoned that the precluded testimony had the potential to mislead the jury, in light of Dr. Hunter's opinion that compulsive gambling disorder does not necessarily affect one's ability to truthfully report wins and losses on income tax returns. *Id.* at 970-71. Because the proposed testimony would not tend to prove willfulness, the court concluded that it "had essentially no probative value but substantial risk of prejudicial effect." *Id.* at 971.

The case for introducing Dr. Hunter's testimony is even weaker here than it was in *Scholl*. While the defendant in *Scholl* was charged with failure to report gambling wins and losses, the instant charges against defendant in no way relate to gambling. By contrast, defendant's evasion of payment charges concern the alleged failure to filed employers' tax returns. (Doc. # 46). Accordingly, expert testimony regarding defendant's purported gambling disorder does not tend to make a fact of consequence more or less probable in this case.

To the extent defendant wishes to use this evidence to dispute whether her tax evasion was willful, such a conclusion does not follow. *See Cheek v. United States*, 498 U.S. 192, 201 (1991) (providing that willfulness requires the government to prove "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty"); *see also Scholl*, 166 F.3d at 971 (excluding expert testimony as to gambling disorder because it did not inform issues of intent and willfulness).

Based on the foregoing, the government's first motion *in limine* will therefore be granted as to Dr. Hunter's testimony. The court will now consider defendant's second expert.

    *ii.   Michael Rosten*

Defendant next plans to call Michael Rosten ("Mr. Rosten"), a certified public accountant. According to defendant's notice of expert testimony, Mr. Rosten has reviewed records of defendant's personal and business accounts. Defendant wishes Mr. Rosten to testify regarding the

James C. Mahan
U.S. District Judge

- 6 -

transfer of funds between defendant and her company, FSHC, as well as certain disclosures on defendant's 2011 income tax return. Mr. Rosten's proposed testimony will include an opinion that defendant was not trying to avoid reporting requirements. (Doc. # 62-1).

The government seeks an order precluding Mr. Rosten's testimony on the grounds that the proposed testimony "lacks the foundational facts demonstrating relevancy or qualification." (Doc. # 62). In support of its motion as to this witness, the government cites a District of New Hampshire case in which the court excluded Mr. Rosten's testimony. *See Harris Wayside Furniture Co. v. Idearc Media Corp.*, No. 06-cv-392-JM, 2008 WL 7109357 (D.N.H. Dec. 22, 2008).

The court will grant the government's motion to preclude this proposed expert testimony. First, Mr. Rosten lacks the personal knowledge regarding whether defendant intended to evade payment. Second, defendant's notice fails to show how Mr. Rosten's testimony as to transfers between defendant's accounts and those of her companies are relevant to the instant charges.

The facts that defendant borrowed money from her company accounts, incurred debts on certain dates, and reported gambling winnings on her personal income tax returns have no bearing on her guilt for structuring and evasion of payment. Accordingly, the court will grant the motion *in limine* as to Mr. Rosten's testimony.

    iii. Dr. Anthony Lucas

The government seeks to preclude the testimony of Dr. Anthony Lucas ("Dr. Lucas") on a number of grounds. (Doc. # 62). Dr. Lucas is a doctor of philosophy in hotel administration. (Doc. # 62-1). The court will grant the government's request as to Dr. Lucas's testimony based on relevance.

Defendant's notice of expert testimony indicates that Dr. Lucas will testify regarding (1) Palace Station's marketing practices; (2) the goal of these practices to maximize revenue; (3) the fact that Palace Station benefitted from defendant's "substantial gaming activity"; and (4) Palace Station's awareness of defendant's "continuous gambling stints." Dr. Lucas would opine that defendant's gambling was excessive and that "pursuit" of defendant would be predatory. (Doc. # 62-1).

James C. Mahan
U.S. District Judge

- 7 -

1   Palace Station's marketing practices, and the extent to which this business profited from
2   defendant's gambling activity, is completely irrelevant to the charges against defendant for
3   structuring and evasion of payment. (Doc. # 46). Based on defendant's notice of expert testimony,
4   Dr. Lucas will not provide any expertise that will assist the trier of fact in this case. Accordingly,
5   the court will grant the government's first motion *in limine* as to Dr. Lucas's testimony. Dr. Lucas
6   will be precluded from testifying at trial.

7      *iv.   Rich Flakus*

8   The government also requests an order precluding Mr. Rich Flakus's ("Mr. Flakus")
9   testimony at trial on the grounds that it is irrelevant and prejudicial. (Doc. # 62). Mr. Flakus is
10  currently employed as a tax consultant, and formerly worked top-level manager in collection and
11  taxpayer service activities with the IRS. (Doc. # 62-1).

12  According to defendant's notice of expert testimony, Mr. Flakus will testify, based on his
13  review of the IRS documents provided by the government in discovery, that "(1) Maria Larkin was
14  attempting to pay her employment taxes; (2) She was getting deeper and deeper in debt to the IRS;
15  and (3) it appears that Ms. Larkin's representative did not utilize all the remedies available to Ms.
16  Larkin." (Doc. # 62-1).

17  The government contends that this testimony would be irrelevant and prejudicial. (Doc. #
18  62). The court agrees. Any testimony that defendant desired or attempted to pay her employment
19  taxes would be improper because Mr. Flakus lacks personal knowledge of defendant's mental
20  state. Further, the extent of defendant's debt to the IRS is not relevant to whether she evaded
21  payment of taxes or abided by any relevant reporting requirements.

22  Expert testimony regarding defendant's offer in compromise with the government would
23  also be improper. These negotiations are irrelevant to defendant's tax liability, and the proposed
24  testimony about the remedies available to defendant is therefore properly excluded. *See United*
25  *States v. Voorhies*, 658 F.2d 710, 714 (9th Cir. 1981) (rejecting defendant's argument that civil
26  remedies must be exhausted before the government initiates criminal prosecution for evasion of
27  payment); *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (affirming rejection of jury
28  instruction on civil remedies as irrelevant and potentially confusing to the jury).

**James C. Mahan**
**U.S. District Judge**

Based on the foregoing, the court will grant the government's motion *in limine* as to Mr. Flakus's testimony and exclude it on the grounds of relevance. The government's first motion *in limine* will therefore be granted in its entirety. The court will now examine the government's second motion *in limine*.

    *b.  Second motion in limine*

In its second motion *in limine*, the government seeks to exclude any suggestion, mention, evidence, or argument regarding suspicious activity reports ("SARs"). (Doc. # 66).

The government explains that defendant requested disclosure of any SARs relating to this case. The government refused to comply on the grounds that these documents are confidential and not subject to discovery. In its motion, the government states that it is neither acknowledging nor denying the existence of SARs related to this case. Nevertheless, the government seeks an order precluding mention of these reports. (Doc. # 66).

Federal regulations prohibit disclosure of SARs and information about their existence. *See* 12 C.F.R. § 21.11(k); 12 C.F.R. § 563.180(d)(12). Financial entities and their officers should decline to produce information regarding SARs despite any subpoena or other request for this material. 12 C.F.R. § 21.11(k)(1)(i); 12 C.F.R. § 563.180(d)(12)(i). Moreover, 31 U.S.C. § 5318 forbids disclosure of SARs or their existence to any person involved in the relevant transaction. 31 U.S.C. § 5318(g)(2)(A).

The Ninth Circuit has not addressed discovery obligations regarding SARs. However, numerous courts in other jurisdictions have addressed the confidentiality of these documents, finding that they are not subject to disclosure. *See Whitney Nat. Bank v. Karam*, 306 F.Supp.2d 678, 682 (S.D. Tex. 2004) (holding that the relevant statute and regulation "create[] an unqualified discovery and evidentiary privilege"); *United States v. Holihan*, 248 F.Supp.2d 179, 186-87 (W.D.N.Y. 2003); *Cotton v. PrivateBank and Trust Co.*, 235 F.Supp.2d 809, 815 (N.D. Ill. 2002); *Gregory v. Bank One Corp.*, 200 F.Supp.2d 1000, 1002 (S.D. Ind. 2002); *Weil v. Long Island Sav. Bank*, 195 F.Supp.2d 383, 389 (E.D.N.Y. 2001); *United States v. LaCost*, No. 10-cr-20001, 2011 WL 1542072, at *7 (C.D. Ill. Apr. 22, 2011).

**James C. Mahan**
**U.S. District Judge**

In light of the foregoing, the court agrees with the government that the minimal probative value of mentioning SARs would be substantially outweighed by the risks of unfair prejudice, misleading the jury, and wasting time.  *See* Fed. R. Evid. 403.  The government states that any exculpatory or relevant evidence contained in these reports has already been provided to defendant.  (Doc. # 66).  Defendant does not provide any response in opposition to the government's motion.

Based on the above, the court will grant the government's second motion *in limine*.  The parties will be precluded from referencing any SARs at trial.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the government's first motion *in limine*, (doc. # 62), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the government's second motion *in limine*, (doc. # 66), be, and the same hereby is, GRANTED.

DATED June 5, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**