UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                   Plaintiff(s),<br><br>             v.<br><br>MARIA LARKIN,<br><br>                                   Defendant(s). | Case No. 2:12-CR-319 JCM (GWF)<br><br>ORDER |

Presently before the court is Maria Larkin's ("defendant") emergency motion for order reducing sentence or modifying judgment. (ECF No. 393). The United States of America ("the government") filed a response (ECF No. 395), to which defendant replied (ECF No. 398). Both defendant and the government filed supplements. (ECF Nos. 399; 400).

Also before the court is the government's motion to seal. (ECF No. 396).

**I.      Background**

As relevant to this motion, the court sentenced defendant to 12 months and 1 day of incarceration on August 28, 2019, for distributing fentanyl. (ECF Nos.348; 350). After an appeal, the court set a date for the defendant to self-surrender to the Bureau of Prisons ("BOP"), and defendant began her term of incarceration on November 11, 2019. (ECF Nos. 353; 382; 383; 384; 385; 390). While defendant has been incarcerated, the novel strain of coronavirus and COVID-19, the resultant respiratory disease, has run rampant throughout the country and the world. While the court need not reiterate the well-known effects COVID-19 has had on day-to-day life, certain populations are particularly at risk of "severe illness" from the virus: the elderly, asthmatic, immunodeficient, and people with HIV. *See* Center for Disease Control, *People Who Are at Higher Risk for Severe Illness,* (April 2, 2020), *available at*

**James C. Mahan**
**U.S. District Judge**

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (*last accessed* May 7, 2020).

The CDC's list of at-risk persons has expanded, and new studies on COVID-19 vis-à-vis comorbidities continue to be promulgated. *Id.*; *see also*, *e.g.,* Xianxian Zhao, et al., *Incidence, clinical characteristics and prognostic factor of patients with COVID-19: a systematic review and meta-analysis* (March 20, 2020);[1] Safiya Richardson, et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area* (April 22, 2020).[2]

Defendant moves this court to commute her time of incarceration to home confinement "due to her susceptibilities to COVID-19." (ECF No. 393 at 3). The government opposed the motion, arguing that defendant had not satisfied the statutory requirements to file the instant motion and that her motion was moot because the BOP designated her for home confinement. (ECF No. 395). On May 12, 2020, defendant was released from FCI Victorville and placed on home confinement. (ECF Nos. 399 at 2; 400 at 2). Defendant must check in with a residential reentry center ("the halfway house") every 72 hours. (ECF Nos. 399 at 2; 400 at 3–4).

## II. Legal Standard

"Even though courts ordinarily have the inherent authority to reconsider its prior orders, such authority does not exist when there is an "express rule to the contrary." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). One such contrary rule exists in the sentencing context: "A court generally may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)). Thus, the court may modify a sentence only when expressly authorized by statute.

The court is expressly authorized to modify a sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). However, courts may consider

---

[1] Available at https://www.medrxiv.org/content/10.1101/2020.03.17.20037572v1.full.pdf.

[2] Available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

James C. Mahan
U.S. District Judge

compassionate release only "upon motion of the Director of the Bureau of Prisons . . . ." *Id.* If a defendant wants to file such a motion with the court, he must fully exhaust his administrative remedies before doing so. *Id.* Since the enactment of the First Step Act, a defendant may file a compassionate-release motion if his application to the BOP goes unanswered for thirty days. *Id.*

To be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under USSG § 1B1.13, "extraordinary and compelling reasons" include, amongst other things, terminal illnesses and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.

### III.   Discussion

As an initial matter, the government moves to seal defendant's inmate profile, which the government avers "contain[s] private information, information that is non-public per BOP policy, and [personal identifying information . . . ." (ECF No. 395 at 1).  The court grants that motion.

The court now turns to defendant's emergency motion.  The parties agree that defendant is no longer incarcerated.  (ECF Nos. 399; 400).  Defendant moved for release from incarceration on the basis of "extraordinary and compelling reasons," e.g., the risk of coronavirus in the penological context.  The court notes that medical conditions that "substantially diminish[] the ability of the defendant to provide self-care **within the environment of a correctional facility** . . ." are grounds for compassionate release.  USSG § 1B1.13 (emphasis added).  Defendant is no longer within the environment of a correctional facility.  Thus, defendant's motion is moot.

Defendant argues that her motion is not moot because she must risk infection every time she checks in with the halfway house.  (ECF No. 399).  Defendant's argument is unavailing.  As the government correctly notes, checking in with the halfway house "puts her at no greater risk of contracting COVID-19 than any resident of Las Vegas who goes to the grocery store, goes to a doctor's appointment, or partakes in any of the activities of social life permitted during this phase of the pandemic." (ECF No. 400 at 3).  This risk does not amount to an inability to provide self-care within the environment of a correctional facility.  *See* USSG § 1B1.13.

**James C. Mahan**
**U.S. District Judge**

The government further avers as follows:

> In light of the COVID-19 pandemic, BOP has designated more than 2,700 additional inmates for home confinement. *See* https://www.bop.gov/coronavirus/. This has created challenges to the RRC's ability to monitor inmates on home confinement (particularly given their inability to use ankle monitors). To address that concern, RRCs have been delegated broad authority to be flexible with respect to the way they conduct monitoring, including alternatives to check-ins and site visits. [Defendant] filed her supplement even before she attended the orientation at the RRC, *see* ECF No. 399, at 2, and makes no claim that she raised any concerns with the RRC, asked for any accommodation, or pursued any administrative remedies.

*Id.* at 4.

Accordingly, the court finds that the BOP's check-in process is a reasonable policy in response to the unprecedented circumstances surrounding the COVID-19 pandemic. As a result, the court denies defendant's motion as moot.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's emergency motion for order reducing sentence or modifying judgment (ECF No. 393) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that the government's motion to seal (ECF No. 396) be, and the same hereby is, GRANTED.

DATED June 12, 2020.

                                        UNITED STATES DISTRICT JUDGE